IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| LAUREL EL-KHATIB | : |
| | : Case No. 1:23-cv-00421 |
| Plaintiff, | : |
| | : Judge Bridget Meehan Brennan |
| v. | : |
| | : |
| UNIVERSITY HOSPITALS HEALTH SYSTEM, INC | : |
| | : JURY DEMAND ENDORSED |
| | : HEREON |
| and | : |
| | : |
| REED GROUP MANAGEMENT, LLC | : |
| | : |
| Defendants. | : |

## AMENDED COMPLAINT

Plaintiff Laurel El-Khatib, by and through her undersigned counsel, herein states the following Amended Complaint against Defendants University Hospitals Health Systems, Inc. and Reed Group Management, LLC ("Reed").

## PARTIES

1. Mrs. El-Khatib is a resident of Parma, Ohio.

2. UHHS is an Ohio corporation that conducts business in, among other locations, Cuyahoga County, Ohio.

3. Reed is, upon information and belief, a Connecticut corporation with its principal place of business in Colorado and with which UHHS has contracted to administer its Family Medical Leave Act ("FMLA") process.

4. At all relevant times, UHHS employed 50 or more employees within 75 miles of Plaintiff's work location.

1

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, as they involve questions of federal law.

6. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of Ohio.

## FACTS COMMON TO ALL CLAIMS

7. Mrs. El-Khatib started at UHHS at the Service Desk in April 2016.

8. At that time, the staff was required to park on the lowest levels of the parking garage at the Cuyahoga County Medical Examiners building.

9. Due to the atrophy in Mrs. El-Khatib's leg muscles from a hereditary neuromuscular disease, she was not able to climb that many stairs and she spoke to Condron, her manager at the time, and to the security staff for the building, and they let her know that as long as she had her disability placard in her car, she could park in the handicap spaces at the top of the garage.

10. In April 2017, Jerome Condron ("Condron"), her then manager sent her an email regarding five days she had missed in the previous 12-month period.

11. As such, UHHS had actual knowledge of her health condition.

12. She was then advised by some co-workers that she should apply for intermittent FMLA leave because she was told that Condron had a problem with employees that had health issues and she needed to protect her job.

13. She immediately filed for FMLA intermittent leave for issues related to her health condition and made sure to follow the process to submit the time.

14. From that point forward, Mrs. El-Khatib kept her FMLA claim active and followed up every year to make sure that the FMLA paperwork was up to date.

15. In February 2021, Mrs. El-Khatib fell down a flight of stairs in her house on her lunch break while working remotely and broke her wrist.

16. As a result of the fall, she had to take almost nine weeks off from work because the injury required surgery to insert a titanium plate in her wrist.

17. Because she had used up all her FMLA time for the year and she was working from home and it was less likely she would need to call off work, she let the FMLA paperwork lapse in 2021.

18. However, in the late spring 2022, Mrs. El-Khatib again sought certification of her intermittent FMLA and filed the necessary paperwork through Defendant Reed, the third-party administrator for UHHS's FMLA process.

19. In that same timeframe, Condron started attending some of Mrs. El-Khatib's weekly Zoom calls with her team lead and having discussions with Mrs. El-Khatib on a variety of issues he felt should result in Mrs. El-Khatib's termination, including telephone calls coming into her line that are then ended.

20. The recorded screen images for some of those calls show no action taken by Mrs. El-Khatib to either answer the call by hitting the answer button on the screen in Cisco Finesse or ending the call by hitting the end button in Cisco Finesse. The recorded screen images for some of those calls do show action taken by Mrs. El-Khatib to end the call by hitting the end button in Cisco Finesse – a common event for a variety of reasons that occur because the caller did not properly end the call.

21. Mrs. El-Khatib could not specifically recall, and therefore could not address, the specific reasons for the alleged instances raised by Condron as he refused to provide information on the days, times or tickets that those allegations addressed, but she did tell him that the atrophy in her hands related to her peripheral nerve disease was advancing and that it was possible that her hand jerked and accidently hit the end button during a call without realizing it.

22. As a result of Condron's incorrect beliefs about Mrs. El-Khatib's telephone calls, she was placed on a written warning, an adverse employment action, on August 3, 2022.

23. Upon information and belief this occurred with other representatives but those occurrences were never addressed with the specific representatives and they were never disciplined.

24. Condron took this action at the direction of Jillian Welch, the then Senior Human Resources Business Partner at UHHS, whose approval is necessary to place an employee on a corrective action.

25. This action was taken in retaliation for Mrs. El-Khatib's having sought FMLA intermittent leave.

26. At the time she received the written warning, she had some of the best scores in the department on her call and ticket reviews and in May 2022, had received UH Appreciation points for taking the most calls in the department that month.

27. From June 30, 2022 through November 21, 2022, Mrs. El-Khatib attempted to take intermittent FMLA leave on numerous occasions.

28. Specifically, FMLA Leave request no. 713926799030 was submitted for the June 10, 2022 to December 8, 2022 time frame and Reed made the following decisions:

- Denial dated 06/29/22 due to paperwork not received even though the evidence shows that it was

4

- 6/10/22-6/23/22 Denied due to not receiving paperwork
- 6/24/22-6/28/22 Approved
- 6/29/22-07/07/22 Denied due to not receiving paperwork
- 7/08/22-12/08/22 Approved
- 6/30/22 – 2 hours - Denied - Did not meet requirements
- 7/08/22 – 2 hours - Denied – Improper leave notice
- 7/22/22 – 2.5 hours Approved
- 8/11/22 – 8 hours - Denied – Improper leave notice
- 8/12/22 – 8 hours - Denied – Improper leave notice
- 8/31/22 – 5 hours – Approved
- 9/12/22 – 3 hours – Approved
- 9/16/22 – 4 hours - Denied – Improper leave notice
- 9/20/22 – 4 hours – Approved
- 9/26/22 – 3 hours – Approved
- 10/06/22 – 3 hours – Approved
- 10/12/22 – 4 hours – Approved
- 11/03/22 – 8 hours – Approved
- 11/11/22 – 4 hours – Approved
- 11/21/22 – 1.5 hours Approved

29. In addition, on August 2, 2022, Mrs. El-Khatib made an ethics complaint against Condron regarding the discriminatory treatment addressed above, which is "protected speech" as it relates to discrimination claims.

30. In a corrective action dated November 28, 2002, Mrs. El-Khatib was placed on a "final warning" for attendance issues on dates she had taken FMLA leave that Reed had improperly denied.

31. In fact, the days denied by the Reed Group accounted for four of the six instances used against Mrs. El-Khatib in the Warning for Attendance.

32. That corrective action was taken by Condron, with Welch's approval, in retaliation for using FMLA intermittent leave.

33. It was also done in retaliation for Mrs. El-Khatib's protected speech.

5

34. In addition, in 2020, during an in-person meeting with Mrs. El-Khatib, Condron admitted to her that he had blocked her from receiving promotions to a higher level in the department because of her health condition.

35. Furthermore, the existence of the final written warning in Mrs. El-Khatib's personnel file prevents her from moving anywhere else with UHHS hospitals.

36. Upon information and belief, Condron treated other UHHS employees in his reporting chain differently due to health issues up to and including the death of a coworker who did not seek timely treatment for a serious health issue because she was worried about losing her job.

37. As a result of the conduct addressed above, Mrs. El-Khatib suffered, and continues to suffer, damages in an amount to be proven at trial.

## COUNT I
## INTERFERENCE/DENIAL OF RIGHTS UNDER THE FAMILY AND MEDICAL LEAVE ACT PURSUANT TO 29 U.S.C. § 2615(a)(1) — ALL DEFENDANTS

38. Plaintiff realleges and restates the facts and allegations above, as if fully rewritten herein.

39. As addressed above, Mrs. El-Khatib sought and utilized intermittent FMLA leave as permitted in the FMLA.

40. Defendants' conduct, as described above, illegally interfered with Mrs. El-Khatib's rights under the FMLA.

41. Both the written warning and final written warning constitute an adverse employment action.

42. For their interference with Mrs. El-Khatib's FMLA rights, Defendants are liable to Mrs. El-Khatib in an amount to be determined at trial.

43. As a direct and proximate cause of Defendants' actions, Mrs. El-Khatib has been damaged in an amount to be proven at trial.

## COUNT II
## RETALIATION UNDER THE FAMILY AND MEDICAL LEAVE ACT PURSUANT TO 29 U.S.C. § 2615(a)(2) —DEFENDANT UHHS

44. Plaintiff restates and reasserts all the allegations set forth above, as if fully rewritten herein.

45. Defendant UHHS, through Condron's and Welch's actions, retaliated against Mrs. El-Khatib for requesting and utilizing intermittent FMLA leave when they placed on both a written warning and a final written warning.

46. As a direct and proximate result of Defendant UHHS, Mrs. El-Khatib suffered damages in an amount to be proven at trial.

WHEREFORE, Mrs. El-Khatib demands the following:

Compensatory and punitive damages, and attorney fees and costs, in an amount to be determined at trial, plus court costs, attorney fees, pre- and post-judgment interest and any and all other relief to which she is entitled to in law and in equity, including but not limited to compensatory, consequential and punitive damages.

          Respectfully submitted,

          DEWITT LAW, LLC

          */s/ Michael W. DeWitt*
          Michael W. DeWitt (0066896)
          4200 Regent Street
          Suite 200
          Columbus, Ohio 43219
          (614) 398-2886
          (614) 750-1379 (facsimile)
          mdewitt@dewittlawco.com
          *Attorney for Plaintiff*

## JURY DEMAND

Plaintiff demands that a jury decide all claims in this matter triable to a jury.

          */s/ Michael W. DeWitt*
          Michael W. DeWitt (0066896)